It appears from the record that the suit was commenced and prosecuted by the Wichita Falls Electric Company, a corporation, in appellee Painter's name. It appears from allegations in the petition and documents made a part thereof that appellant's city council adopted an ordinance, which was duly approved February 2, 1909, granting the *Page 499 
Bowie Light Power Company, whose rights appellee afterward acquired, the right, during 25 years —
"to construct and operate an electric light and power plant within the corporation limits of the city of Bowie, and the right to use and sell electricity and to do any act or thing pertaining thereto which is necessary to the operation of such electric light and power plant, and to erect all poles, machinery, lines of wire and other improvements incidental to and necessary for such purposes, * * * and to lay the necessary lines of wire and the connections thereto upon and along said poles, in any and all streets, alleys, squares and public grounds of the city and any further addition thereto, and to use and occupy the same for such purposes, provided that all such poles, wires, lines and connections shall be placed at such places as is designated by the city council of the city of Bowie, and under such reasonable regulations as may be prescribed by said council."
A condition of the grant was that the light and power company should —
"at all times during the operation of their franchise furnish to the city all necessary lights at its pumping station, at the city well, or wells, as well as its fire hall, and at its public calaboose, or jail, viz. two lights at the pumping station, two lights at the fire hall, and one light at calaboose."
It further appears from said petition that appellant afterward, to wit, in May, 1919, installed and began to operate an electric light and power plant of its own in competition with the plant then being operated by said Wichita Falls Electric Company as authorized by said ordinance approved February 2, 1909. With reference to this it was alleged in said petition that appellant was a town of "less than 3,500 inhabitants — insufficient in fact to support two independent electric light plants," and that —
"in a very short time the contest for customers became very active and acute between the two plants until the city and its representatives inaugurated and began a practice which this plaintiff says was unfair and unreasonable, to wit: That the city, in order to take customers from plaintiff, would offer to install street lights upon poles near the particular customer in question, if such customer would change from plaintiff's plant to defendant's plant for light service, and that no charge would be made for street lighting, and further that the city plant would place and install electric lights under the awnings of storehouses and in the show windows of storehouses, and in the storehouses themselves, some little distance back from the door, on the pretext that these lights were for the purpose of street lighting, but, in fact, they were thus placed, free of charge, in certain buildings, provided the owner and user of the houses would cease to be customers of the plaintiff for electric lighting and become customers of the city plant. This character of lighting was furnished free and without charges by the city plant, and was resorted to for the purpose of inducing the occupants of the building to quit the plaintiff's plant and become customers of the defendants' plant. This practice was inaugurated and carried on by the defendants for some time, and they were successful to a considerable degree, because thereby many customers of plaintiff were actually induced to cease to be customers of the plaintiff for ordinary lighting and became customers of the defendants, city of Bowie, to plaintiff's damage to a considerable amount, namely, over $1,000 per annum. Plaintiff avers that the deliberate purpose and intention of this character of conduct was to put plaintiff out of business in the city of Bowie, and this purpose was declared publicly and otherwise by at least the mayor of said city from time to time, and thus plaintiff faced a serious situation; he must either suffer a serious loss in the operation of his plant and in the loss of his customers, or dismantle his property and move out of town, which would have imposed a loss upon plaintiff of an amount in excess of the real value of his property, to wit $50,000; so, in order to meet this situation, plaintiff was compelled to and did offer to his customers and citizens of the town to do likewise; that is, to install free lights, some upon poles, some upon the streets, and some under the awnings of stores and mercantile establishments, and some in show windows of such places, and some on the inside of storerooms of such places some distance back from the front door, just as the defendants were doing, and thereupon became a contest between plaintiff and defendants in rendering such service and holding or procuring customers for ordinary lighting and power; this character of conduct continued to the loss of both parties, but so long as defendants engaged in such conduct plaintiff was compelled to do so also, or else go out of business."
It was further alleged in said petition that —
"such conduct and the furnishing of free lights, as before stated, was, in fact, a discrimination against other customers, and the loss falling upon the plaintiff was compelled to be borne by him, whereas the loss which fell upon the defendant was passed to the general treasury of the municipality, including therein this plaintiff, who was also a taxpayer within said city, notwithstanding this, the defendant, the city of Bowie, in furtherance of its plan and purpose to put this plaintiff out of business within said city, conceived other plans; namely, to use its assumed power to regulate rates, and to ordain when and under what circumstances free service could be rendered, exempting itself from the operation thereof, but prohibiting this plaintiff from doing the same things the defendant were doing, so that, the said defendant, its mayor, and councilmen, on or about the 14th day of February, 1922, ostensibly in their official capacity, in purporting to so act, and without any notice whatever to the public, and especially to this plaintiff, and without giving plaintiff an opportunity to be heard, met in the privacy of its hall, and undertook to pass, and apparently did pass, three ordinances, each with the emergency clause to take effect from and after its passage, approval, and publication, copies of which are attached hereto and made a part hereof, and marked Exhibit B, C, *Page 500 
and D, respectively. That the city council and mayor, in passing these three ordinances, did not do so in good faith and in the bona fide exercise of any legislative authority, but, being actuated by petty jealousy and spite, and in an effort to put this plaintiff at a great disadvantage and cripple and impair the business of this plaintiff as to eventually run him out of business and out of town, to plaintiff's great damage as aforesaid undertook to pass and purported to pass, said ordinances, all as a part of said scheme and plan."
One of the ordinances referred to declared it should —
"be unlawful for any person, persons, firm, company or corporation within the corporate limits of the city of Bowie (without the written consent of the mayor and the approval of the city council) to place or maintain any lights commonly known or used as a street light, upon a pole or other object within the corporate limits of the city of Bowie, Texas, and located upon any street or alley within such city, outside of the fire limits, as now or hereafter designated by the city council of the city of Bowie, Texas."
Another of said ordinances declared it should be unlawful —
"for any person, persons, firm, company or corporation operating an electric lighting and power plant, or either, within the corporate limits of the city of Bowie, Texas, (without the written consent of the mayor and approval of the city council) to furnish light or power, or either, to the inhabitants of the city of Bowie, or to any portion of such inhabitants of the city of Bowie, Texas, to furnish any free light or power, or both such lights and power, either directly or indirectly, to any person, persons, firm, company or corporation in the said city of Bowie, Texas."
And further declared it should "be unlawful for any person, persons, firm, company or corporation operating or maintaining an electric lighting system in the city of Bowie to place any light upon poles in the streets within the city of Bowie, Texas, for which regular compensation is not charged for such light or lights."
Each of the two ordinances specified contained a provision that any person, firm or corporation "violating the provisions hereof shall be subject to a penalty of $25 a day, and each day that said provisions are violated shall be a separate and distinct violation," and a provision that —
"nothing herein shall be so construed as to prohibit the city of Bowie from placing lights upon any street or upon any sidewalk or in any store, shop or other buildings, or at any other place when the same is so situated or placed that said lights will illuminate any porof the streets, alleys or sidewalks of said city of Bowie."
The other one of said ordinances declared:
"It shall hereafter be unlawful for any person, persons, firm, company or corporation operating a light and power plant within the city of Bowie, Texas, or furnishing lights or power, or either of them, to the inhabitants or any portion of the inhabitants of the city of Bowie to charge any less than"
— rates specified in the ordinance. It was declared in the ordinance that it should not "apply to flour mills or hospitals," and it was further declared therein, as it was in the other two ordinances above referred to, that a person, firm, or corporation who violated its provisions should be subject to a penalty of $25 a day, and that "each day shall be considered a separate and distinct violation."
It was alleged in said petition that —
"said ordinances, and each of them, were not passed in good faith, and that said city government and the said city council had not jurisdiction of the subject-matter referred to therein, and were without any lawful or legal right to pass the same, and aside from this, that each of said ordinances is unreasonable, arbitrary, oppressive, enacted for that purpose. Said ordinances were printed in a weekly paper published in Bowie, known as the Bowie Blade, this publication or printed issue came out on the 16th day of February, 1922, and plaintiff, on information and belief, charges that said weekly paper was not the paper or the official paper duly elected as such and as required by law. Plaintiff avers that he owns and operates the only other electric light and power plant in the city of Bowie, as well known to the defendants mayor and aldermen, and that said ordinances were intended and directed at and towards this plaintiff, and could apply to no other company or concern (aside from the municipality itself)."
And that —
"The effect of the ordinances is to deprive plaintiff of his property and his business without due process of law; without notice or opportunity to be heard, and without compensation. The effect is, or will be, that the defendants' plant can offer inducements and free service to plaintiff's customers as an inducement to procure said customers for themselves, which the plaintiff himself cannot offer without violating the terms of said ordinances, and thereby deprive this plaintiff of his customers, and impair the value of his property, almost to its full extent, at least to $40,000. Furthermore, defendant (plaintiff) charges that the foregoing was the intent and purpose of the defendants in passing, or undertaking to pass, said three ordinances, and was unfair and un just, and highly discriminatory."
And further that the effect of the two of the three ordinances first mentioned was to permit appellant to —
"go into the store of a customer of this plaintiff, and say to him, `we will put a light in your store (just so a ray of said light can reach out in the street), if you will take your name off of the plaintiff's list and become a customer of the city for other lights, this without any charge, and without any limit as to the candlepower or number of lights.' This plaintiff is prohibited under penalty of $25 a day from doing this *Page 501 
very same thing. Plaintiff shows that this character of service is not the ordinary and customary street lighting as it exists and practiced through the country where the lights are placed upon poles at street corners, but is a direct admission that the purpose is to go into a man's store, shop, or other building and place an electric light just so a ray reaches the street, and that without charge, but plaintiff cannot offer this. Plaintiff charges that this is the most vile and unjustified and unreasonable attempt at discrimination and partiality. It is no answer, or even palliation, that said ordinance permits a written application for street lighting. This generous offer, is, in the first place, subject to the consent of the mayor and then of the council, and is only discretionary in any event; it does not relate at all to lights `in any store, shop, or other building,' the placing of which light the city is permitted to do; even as to street lighting it places the discretionary power in the head of the very concern that has declared his purpose to run this plaintiff out of town."
And it further alleged that each of said two ordinances was —
"unreasonable, arbitrary, discriminatory, and excessively harsh, and place within the hands of the city power to exclude and run plaintiff out of town, and were intended for that very purpose."
With reference to the third one of the three ordinances specified as passed February 14, 1922, it was alleged that, if appellant had right or power "to inaugurate a schedule of rates," it was —
"only when the rates prescribed will yield to the company not less than 10 per cent. per annum net on the actual cost of the physical properties, equipments, and betterments used and useful in the business, and, in this connection, plaintiff charges that an application of the rates, as prescribed in said Ordinance D, would not yield to this plaintiff 10 per cent. per annum not on the actual cost of the physical properties, equipments, and betterments, but would result in an actual loss in operation. Said rates so prescribed are not scientifically and reasonably balanced, but are unscientific. Plaintiff avers that power rates are prescribed and formulated with reference to industrial enterprise, and must be calculated at a rate to justify the enterprise in using electric power, rather than some other power, and not to do this is to lose the revenue derived from power. In other words, if the industrial consumer can make his own energy with other power cheaper than to use electric power, he will do so, so that the company thereby loses his business; a considerable business from which it can make a profit, if allowed to serve him, for this reason charges which are scientific, enterprises can afford to pay, rather than use other power, and still at a rate remunerative to the electric plant. The schedule of rates in said Ordinance D is not constructed upon this basis at all. It is provided in said ordinance that the charges shall not be less than the rates prescribed. Should the rates prescribed be charged to the industrial electricity for power or energy and substitute some other power, plaintiff, for instance, has one customer, the Bowie Ice Cold Storage Company, who is a valuable customer, and will become more so by certain improvements now contemplated, but to apply to it the rates prescribed in said Ordinance D, it would be to the advantage of this company to abandon electric power and use other fuel, and it would no doubt do so, to plaintiff's great loss. Other enterprises are in the same condition, so that the schedule of rates prescribed in the ordinances are, in fact, ruinous because not rightly balanced, and they will result in a loss instead of a profit, and thereby produce confiscation. The city plant has not the same volume of industrial business as this plaintiff, and, besides, has the city treasury or taxpayers from which to draw in case of loss, but it is very sure with the schedule of rates prescribed in said ordinances and balanced as they are, a considerable loss will be suffered by whatever electric power plant undertakes to serve them. If the charges must be kept up to the rate prescribed, then there will be no or little receipts for the reasons above stated. So that, under said ordinance plaintiff avers that an application thereof will result in confiscation of his property to an eytent of $5,000 and more than $10,000; indeed, and in truth, it will result in a destruction of his business, contrary to the Constitution of the state of Texas and the Constitution of the United States."
And it was alleged further, with reference to the provision that the ordinance should not apply to flour mills nor hospitals —
"that this exemption vitiates, and (is) not within the power of the city to enact. It is unquestioned and known to be a fact that there is only one flour mill within the corporation limits of Bowie, and that it is the user of electricity for lights and power, and is a customer of this plaintiff. If said flour mill is exempt from the operation of said ordinance, then, under the same, plaintiff would be compelled to charge said flour mill the same price as other industrial enterprises, or be guilty of unlawful discrimination, and, if plaintiff did make such charge, then the same would be so high that it would be to the advantage of the flour mill to use other fuel for its energy, and thereby it would be lost as a valuable customer to this plaintiff. If the city undertook to take on the flour mill at a rate lower than the schedule, it would also be guilty of discrimination, besides having to charge the loss up to some other account in its treasury, and would have an unjust advantage over plaintiff. And this, as plaintiff verily believes, is the motive which actuated the exemption of said flour mill from said schedule. At any rate, being the industrial enterprise, the rate should be uniform and compensatory, having in view at the time the cost of running such plant by fuel other than electricity. The same is true as to hospitals. There is only one hospital, as is well known, in the boundaries of the city of Bowie, owned by a private individual, and operating for personal profit and not as charity, and no reasons exist why any partiality should be shown to it; it is the user of light and power. If plaintiff should furnish the same at less than the rate prescribed in the schedule, on the ground that it was exempted from the operation thereof, it would be guilty of unlawful *Page 502 
discrimination as to other industrial power users which are within the terms of said ordinance. If on the other hand, plaintiff should charge said hospital the same rate as other similar enterprises, under the terms of said ordinances, then it would be to the advantage of said hospital to procure its energy with some other fuel, and it would probably do so, or be taken over by the defendant at a discriminatory rate, charging the loss up to the taxpayers and the city treasury; and the plaintiff verily believes this is the intent, purpose, and object causing the insertion of section 6 in said ordinance, exempting flour mills and hospitals. Whatever may be the motive, plaintiff avers that the fact remains that said exemption is illegal, void, and renders the entire ordinance invalid. If for no other reason, said ordinance, plaintiff avers, is unreasonable and arbitrary, and enacted for the unlawful and illegal purpose of placing the plaintiff at a disadvantage, and eventually running plaintiff out of town, as was threatened by the mayor aforesaid, and by his unfair method procuring such industrial enterprise as customers, even at a loss."
And it was alleged, further, that "early in February, 1922, and prior to the enactment of the three ordinances," appellee "had worked out a scientific schedule rates for residential lighting and mercantile lighting to be (applied) within the city of Bowie, which rates were free from discrimination, and reasonable in every respect, both as to plaintiff's plant and that of the city of Bowie, and as to the public" (specifying such rates), and that appellee then had in effect "a schedule of power rates" (specifying such rates), and that such rates were lower than the rate specified in the ordinance. Appellee then alleged that —
"the penalties attached to each of said ordinances aforesaid are excessive and unreasonable, but, having been enacted as they were, defendant claims that the same are in full force and effect, and plaintiff avers that unless the enforcement of said ordinances is enjoined that it will be subject to multiplicity of suit, great cost, and expense, and will be harassed and vexed by the defendant, and confusion will exist among customers of plaintiff, numbering something over 200 citizens, and, on the other hand, if he should comply with said ordinances, his business would be practically destroyed for the reason hereinabove stated, and his property confiscated without due process and without compensation, and he would sustain irreparable loss, and that his only remedy is to appeal to your honor for a restraining order enjoining the enforcement of said ordinances until further order of this court."
The prayer in the petition was for judgment declaring said ordinances adopted February, 14, 1922, to be void, and restraining appellant —
"from placing free lights upon sidewalks or in any store, shop or other buildings within the city of Bowie, or discriminating in any way against plaintiff in respect to the placing of any lights or furnishing power to the inhabitants of the city of Bowie, and that the defendants be restrained from interfering with the promulgation and enforcement of the schedule rates prepared by the plaintiff, as hereinbefore alleged, which are nondiscriminatory, reasonable, and fair to all parties, and that upon further hearing said injunction be made perpetual; and for all such other orders and relief to which plaintiff may be entitled in law or equity under the facts in this case, for all costs of suit and for general relief."
The appeal is from a judgment in appellee's favor declaring the three ordinances complained of void, and enjoining appellant's mayor and city council and their successors in office "from enforcing or seeking to enforce said ordinances or either of them or any part of either of them."
As the record does not contain an assignment of errors, this court in disposing of the appeal is not called upon to do more than determine whether the pleadings of appellee warranted the relief granted or not. We think the pleadings did warrant such relief, and that the judgment therefore should be affirmed.
It is well settled that courts have the power, and it is their duty, to declare void and inoperative unreasonable, discriminatory, and oppressive ordinances adopted by a municipal corporation in the exercise of general powers bestowed upon it. 28 Cyc. 368; 19 R.C.L. 805; 2 Abbott Mun.Corp. 1357; Indemnity Co. v. Schwartz (Tex. Iv. App.) 172 S.W. 581; Refining Co v. Fort Worth (Tex.Civ.App.) 229 S.W. 616; City of Sullivan v. Cloe,277 Ill. 56, 115 N.E. 135; Ry. Co. v. Dallas, 98 Tex. 396, 84 S.W. 648,70 L.R.A. 850; Roney v. Young, 142 Mo. App. 160, 125 S.W. 857; Churchill v. City of Albany, 65 Or. 442, 133 P. 632, Ann.Cas. 1915A, 1094; Light Co. v. Hackett, 135 Wis. 464, 115 N.W. 376, 1136, 1139; City of New Orleans v. Palmisano, 146 La. 518, 83 So. 789; Ex parte Lerner (Mo.)218 S.W. 331. Assuming that the allegations in appellee's pleadings are true, as we must in determining the question presented, and looking to the face of the respective ordinances, we think it is clear that each of them is subject to charges made against it in appellee's pleadings.
 The judgment is affirmed. *Page 503